IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.                                    Criminal No. 3:10CR138

EDWARD T. JOHNSON, JR.

## MEMORANDUM OPINION

Edward T. Johnson, Jr., a federal inmate proceeding pro se, submitted this motion and a supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (ECF No. 38.) Johnson raises the following claims for relief:[1]

Claim One:    Counsel rendered ineffective assistance by failing to file a motion to suppress evidence seized.

Claim Two:    Counsel rendered ineffective assistance by "failing to argue and raise any affirmative defense such as entrapment, entrapment by estoppel and a confidential informant cannot serve a[s] 2nd party to conspiracy." (§ 2255 Mot. 6.)

Claim Three:  Counsel rendered ineffective assistance "for erroneously advising Petitioner to plead guilty to a statement of fact, which was not knowingly not voluntarily entered." (Id. at 8.)

Claim Four:   Counsel rendered ineffective assistance by "advising Petitioner to accept a waiver of right to a Rule 11 before a U.S. District Judge and erroneously advising Petitioner to plead guilty to a statement of fact before a Magistrate Judge." (Id. at 9.)

---

[1]  The Court corrects the spelling in quotations from Johnson's submissions.

Claim Five: The Government "err[ed] in arguing against the Fair Sentencing Act of 2012." (Mem. Supp. § 2255 Mot. 11, ECF No. 39.)

Claim Six: Counsel rendered ineffective assistance "for failing to file a direct appeal, in advance of the United States Attorney filing." (Id. at 12 (capitalization corrected) (emphasis omitted).)

The Government has responded. Johnson has not filed a reply. The matter is ripe for disposition.

## I. FACTUAL AND PROCEDURAL HISTORY

The grand jury charged Johnson in a two-count indictment with conspiracy to distribute fifty grams or more of cocaine base (Count One) and distribution of cocaine hydrochloride (Count Two). (Indictment 1-2, ECF No. 1.) On June 11, 2010, Johnson waived his right to a Rule 11 hearing before a United States District Judge and pled guilty to both counts. (ECF Nos. 11-13.) In the Statement of Facts, Johnson agreed that "the factual allegations contained in this Statement of Facts and in Counts One and Two of the Indictment filed in this case are true and correct, and that the United States could have proven them beyond a reasonable doubt." (Statement of Facts 1, ECF No. 13.) Johnson agreed that:

> 1. Beginning on or before July 1, 2009, and continuing through and including on or about February 17, 2010, in the Eastern District of Virginia and within the jurisdiction of the Court, the defendant, EDWARD T. JOHNSON, JR., did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with others, known and unknown, to distribute, and possess with the intent to distribute, fifty grams

or more of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(iii), containing a detectable amount of cocaine base, commonly known as "crack," a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841 (a), in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(A)(iii).

2. On or about the 5th day of November, 2009, in the Eastern District of Virginia and within the jurisdiction of this Court, the defendant, EDWARD T. JOHNSON, JR., did knowingly, intentionally, and unlawfully distribute a mixture and substance containing a detectable amount of cocaine hydrochloride, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

3. Beginning in 2009, the Naval Criminal Investigative Service, the Federal Bureau of Investigation, the Virginia State Police, and the Fredericksburg Police Department began an investigation into the narcotics distribution activities of EDWARD T. JOHNSON, JR. and others.

4. During the time period set forth in the indictment, four controlled purchases of cocaine base, commonly known as "crack," and cocaine hydrochloride were made from JOHNSON and his co-conspirator. On July 1, 2009, a confidential source ("CS") purchased 26.6 grams of a mixture and substance containing a detectable amount of cocaine base from JOHNSON and his co-conspirator. On July 10, 2009, a CS purchased 27.2 grams of a mixture and substance containing a detectable amount of cocaine base from JOHNSON and his coconspirator. On August 19, 2009, a CS purchased 24.8 grams of a mixture and substance containing a detectable amount of cocaine base, as well as 26.9 grams of a mixture and substance containing a detectable amount of cocaine hydrochloride, from JOHNSON and his coconspirator. On September 29, 2009, a CS purchased 13.2 grams of a mixture and substance containing a detectable amount of cocaine hydrochloride from JOHNSON and his coconspirator. JOHNSON conducted all of these controlled purchases in conjunction with his coconspirator and in furtherance of their conspiracy[.]

5. On November 5, 2009, JOHNSON alone sold 13.7 grams of a mixture and substance containing a detectable amount of cocaine hydrochloride to a CS. JOHNSON conducted this controlled purchase in furtherance of the conspiracy.

6. In addition to the above, JOHNSON supplied cocaine base and cocaine hydrochloride to a co-conspirator from July 1, 2009, to February 17, 2010. The co-conspirator then re-sold the cocaine base and cocaine hydrochloride to others. During this time period, JOHNSON supplied 66.2 grams of a mixture and substance containing a detectable amount of cocaine base and 101.7 grams of a mixture and substance containing a detectable amount of cocaine hydrochloride to the co-conspirator.

7. All of these events occurred within the Eastern District of Virginia.

8. The defendant did commit the acts set forth in Count One of the Criminal Indictment, and he did so knowingly, intentionally and without legal justification or excuse, and with the specific intent to do that which the law forbids, and not by mistake, accident or any other reason.

(Id. at 1-3.)

The Court conducted a Rule 11 hearing, and accepted Johnson's guilty plea. (See ECF Nos. 14, 16.)

At the time of Johnson's guilty plea in June 2010, Count One carried a statutory mandatory minimum of ten years in prison and up to a sentence of life. 21 U.S.C. § 841(b)(1)(A)(iii) (2010). On August 3, 2010, the Fair Sentencing Act of 2010 ("FSA")[2] became effective. See Dorsey v. United States, 132 S. Ct. 2321, 2329 (2012). Among other things, the FSA increased the amount of crack cocaine needed to trigger the statutory

---

[2] Pub. L. No. 111-120, 124 Stat. 2372.

4

mandatory minimum sentences under 21 U.S.C. § 841(b)(1). See id. The FSA lowered the mandatory minimum sentence for a conviction for fifty grams of crack cocaine, but less than 280 grams, from ten years to five years. See 21 U.S.C. §§ 841(b)(1)(A)(iii) and (b)(1)(B)(iii) (2011). At the time of Johnson's sentencing on December 3, 2010, the United States Sentencing Guidelines Manual ("USSG") already reflected amended drug quantity amounts in its base offense levels brought about by directives in the the FSA. See USSG § 2D1.1(c)(1)(6).

The Presentence Report ("PSR"), using the 2010 USSG Manual, found Johnson to have a base offense level of 28, and assessed a three-level adjustment for acceptance of responsibility, resulting in a total offense level of 25. With a criminal history of III, Johnson's guideline range was seventy to eighty-seven months. Utilizing the ten-year statutory mandatory minimum in place at the time of his criminal acts for Count One, Johnson's restricted guideline range was 120 months.[3]

During sentencing, counsel argued that Johnson should receive the benefit of the FSA which was signed into law on

---

[3] Under the 2009 version of the Sentencing Guidelines, used until November 1, 2010, Johnson's base offense level for Count One would have been 30, based on a finding that he distributed 144.8 grams of crack cocaine. See USSG § 2D1.1(c)(1)(5) (2009); (PSR, Worksheet A, at 1.) With a three-level adjustment for acceptance of responsibility, Johnson's resulting guideline range would have been at least 87 to 108 months. See USSG § 2D1.1(c)(1)(5). However, the restricted range would have been 120 months based on the ten-year statutory mandatory minimum.

August 3, 2010, after Johnson's criminal acts, but prior to his
December 3, 2010 sentencing.  Counsel argued that the 120-month
mandatory minimum sentence in effect at the time of Johnson's
commission of the criminal acts, should not apply, not only
because it exceeded the amended guidelines ranges, but because
the FSA had reduced the mandatory minimum to five-years.  (Dec.
3, 2010 Tr. 3, 22-23, 32.)[4]

After lengthy argument, the Court sentenced Johnson below
the 120-month mandatory minimum to eighty-seven months on the
conspiracy count and a concurrent term of seventy months for the
distribution count.  (Dec. 3, 2010 Tr. 32, 41; J. 2, ECF
No. 27.)

The United States noted an appeal, challenging the Court's
application of the FSA to Johnson's sentence.  (ECF No. 31.)
The United States ultimately moved to dismiss the appeal on
policy grounds (Gov't's Resp. 10, ECF No. 41), and on August 2,
2011, the United States Court of Appeals for the Fourth Circuit
granted the motion.  (ECF No. 36.)  Johnson executed his § 2255
Motion on July 27, 2012.  For the reasons stated below,
Johnson's claims lack merit and will be dismissed.

---

[4] It was not until June 21, 2012, that the United States
Supreme Court decided that the FSA applied to defendants, such
as Johnson, who were convicted for conduct occurring before the
enactment of the FSA, but who were sentenced after the FSA went
into effect on August 3, 2010. See Dorsey, 132 S. Ct. 2335.

## II.   SENTENCING CLAIM

In Claim Five, Johnson faults the United States for

continu[ing] to argue consistent with its pleadings
that the mandatory minimum should apply because the
petitioner committed his offense before the Fair
Sentencing Act [became] law.   After hearing argument,
this court concluded that the Fair Sentencing Act did
eliminate[ ] the 120 mandatory minimum and imposed the
high end of the guideline[s] on [C]ount 1 and 70
months on [C]ount 2, with the sentences to run
concurrently.

(Mem. Supp. § 2255 Mot. 11.)   The Court fails to discern and

Johnson fails to articulate, how the Government's failure to

argue that the FSA applied to Johnson's sentence, states a

cognizable claim for habeas relief.   Moreover, to the extent

Johnson states a claim, the procedural default rule bars Claim

Five from review here, absent a showing of cause and prejudice

or actual innocence, because Johnson could have raised, but did

not raise, this claim on direct appeal.   See Bousley v. United

States, 523 U.S. 614, 622-23 (1998); United States v. Frady, 456

U.S. 152, 167-68 (1982).   Johnson fails to show cause and

prejudice or actual innocence.   Accordingly, Claim Five will be

dismissed.

## III. ALLEGED INEFFECTIVE ASSISTANCE

### A.   Applicable Law

To demonstrate ineffective assistance of counsel, a

convicted defendant must show first, that counsel's

representation was deficient and second, that the deficient

7

performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made

8

during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations and quotations omitted). Accordingly, the Fourth Circuit has admonished that, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. The Court discerns no circumstances that would lead the Court to consider Johnson's prior sworn statements as other than truthful. See id.

Moreover, Johnson's claims of ineffective assistance of counsel are vague, conclusory, and fail to state a claim for habeas relief.

### B. Failure To File A Motion To Suppress

In Claim One, Johnson faults counsel for failing to investigate and file a motion suppress. To support his claim, Johnson states, "Petitioner contends that defense counsel knew or should have known to file a suppress motion for the evidence was seized in violation of the [F]ourth Amendment . . . ." (§ 2255 Mot. 5.) Johnson continues by providing nothing more than the legal standard for Fourth Amendment claims and Sixth Amendment ineffective assistance claims. (Id.; see Mem. Supp. §

9

2255 Mot. 5.)  Johnson supplies no basis upon which counsel could have filed a suppression motion.  Thus, Johnson's conclusory claim fails to state claims for relief.  See Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas action appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

Johnson demonstrates no deficiency of counsel or resulting prejudice, and Claim One will be dismissed.

### C.  Failure To Raise Affirmative Defenses

In Claim Two, Johnson argues that counsel "fail[ed] to argue and raise any affirmative defenses such as entrapment, entrapment by estoppel, and a confidential [i]nformant cannot serve a 2nd party to conspiracy." (§ 2255 Mot. 6.)  Once again, Johnson merely sets forth the legal standards for the listed affirmative defenses, and fails to proffer any facts that could provide a basis for counsel to argue any such affirmative defense.  Johnson's vague, conclusory claim without factual support fails to state a claim for habeas relief.  Sanders, 373 U.S. at 19.  For this reason alone, Claim Two will be dismissed.

Moreover, Johnson pled guilty and agreed that the Government could prove beyond a reasonable doubt that he conspired to distribute fifty grams or more of cocaine base and distributed cocaine hydrochloride.  Johnson also agreed that he was indeed guilty of those charges.  As explained below, Johnson

fails to demonstrate that his guilty plea was invalid. Accordingly, Johnson demonstrates neither deficiency of counsel or resulting prejudice, and Claim Two will be dismissed.

D.    **Failure To Ensure Validity Of Plea**

In Claim Three, Johnson argues that counsel rendered ineffective assistance "for erroneously advising Petitioner to plead guilty to a statement of fact[s], which was not knowingly or voluntarily entered." (§ 2255 Mot. 8.)  Similarly in Claim Four, Johnson argues that counsel erred by "advising Petitioner to accept a waiver of right to Rule 11 [hearing] before a U.S. District Judge and erroneously advising Petitioner to plead guilty to statement of fact[s] before a Magistrate Judge." (Id. at 9.)  Johnson lists a host of vague, conclusory, purported errors of counsel, including, that counsel failed to "discuss any pertinent strategies with him except pleading guilty to the statement of fact before a Magistrate Judge and waiver of right to Rule 11 before a U.S. District Judge," failed to inform Johnson "the government would need to prove the charges beyond a reasonable doubt," and failed to inform Johnson about defenses such as "government agents may not originate a criminal design," and entrapment.  (Id. at 8.)  Johnson also claims that "when Your Honor questioned Petitioner regarding his understanding of the statement of fact, counsel erroneously advised Petitioner as to the answers." (Id.)

11

Johnson's claims about counsel's purported deficiency and
are foreclosed by his sworn statements at the Rule 11 hearing.
The Court first asked Johnson whether he waived his right to a
Rule 11 hearing before a District Judge, Johnson agreed, and
signed the written form consenting to proceed before the
Magistrate Judge.   (Rule 11 Hr'g 9:43:52-9:44:38.)   During the
hearing, Johnson agreed that he had a sufficient opportunity to
discuss with his counsel "everything about [his] case,"
including potential defenses, and the decision of whether or not
to plead guilty.   (Rule 11 Hr'g 9:48:22-9:48:35.)   Johnson also
agreed that he had discussed with his attorney how his sentence
would be determined and the applicability of the sentencing
guidelines to his case.     (Rule 11 Hr'g 9:48:35-9:48:40.)
Johnson agreed that he was "entirely satisfied" with counsel's
representation, and that counsel had "done all [he] needed" to
allow him to make an informed decision whether or not to plead
guilty.  Johnson also affirmed that it was his decision to plead
guilty.   (Rule 11 Hr'g 9:48:40-9:48:56.)   Johnson affirmed he
understood that if he pled not guilty and proceeded to trial,
that the Government would have to prove each element of the
charged offenses beyond a reasonable doubt.  Johnson also agreed
that by pleading guilty to the charges he was "admitting that
[he] did what the Government says [he] did and also that they
can prove the charges."    (Rule 11 Hr'g 9:49:21-9:49:33.)

Johnson agreed that he understood that by pleading guilty "[he was] saying to [the Court he] did this and [he] can never then say [he] did not." (Rule 11 Hr'g 9:50:29-9:50:37.) Johnson agreed that he was pleading guilty to the two charges because he was in fact guilty of both. (Rule 11 Hr'g 9:50:37-9:50:41.) Johnson affirmed that he signed the Statement of Facts because the information contained therein was true. (Rule 11 Hr'g 9:54:56-9:55:01.) The Court found Johnson's guilty plea was knowingly and voluntarily entered, made with full knowledge of the consequences, and was supported by an independent basis of fact. (Rule 11 Hr'g 9:55:04-9:55:38.)

Johnson alleges no extraordinary circumstances to undermine his sworn statements to the Court that counsel performed satisfactorily or that his guilty plea was anything other than knowingly and voluntarily entered into. Because Johnson's claims necessarily rely on conclusory allegations contradictory to Johnson's statements during the plea colloquy, for this reason alone, Claims Three and Four will be dismissed.

Moreover, Johnson also fails to demonstrate any deficiency of counsel, or resulting prejudice, with respect to his decision to plead guilty. Johnson fails to demonstrate that, but for trial counsel's purported errors, he would not have pleaded

guilty and would have insisted on going to trial.   <u>Hill</u>, 474
U.S. at 59.[5]

Because Johnson fails to demonstrate any deficiency or
prejudice, Claims Three and Four will be dismissed.

### E.   Failure To File An Appeal

In Claim Six, Johnson suggests that counsel failed to file
a direct appeal.   Johnson provides terse, conclusory arguments
in support of his claim.   Johnson states:   "Defense counsel knew
or should have known that she could have raised and argued these
issues herein on direct appeal, if she would have filed the
Notice of Appeal and direct Appeal in advance, so that the Court
of Appeals can review these issues on their merits."   (Mem.
Supp. § 2255 Mot. 12.)   Johnson fails to identify what claims
counsel he believes counsel should have raised on appeal.   At
most he provides a vague argument that he would have appealed
his sentence.   Johnson states, in sum:   "Petitioner was unhappy
with the 87 months he received, and if the U.S. Attorney would
not have argued against the Fair Sentencing Act of 2010 . . .
there is a reasonable probability that the result of the

---

[5] Johnson makes no argument that he would have insisted on
proceeding to trial despite counsel's deficient performance.
Even if he had, the Government notes that "Johnson previously
was convicted of a 'felony drug offense' under 21 U.S.C.
§ 802(44) and, could have been enhanced under 21 U.S.C. [§] 851
if he had proceeded to trial."   (Gov't's Resp. 6, ECF No. 41.)
In light of the sentencing benefit Johnson received by pleading
guilty, no reasonable defendant in Johnson's position would have
insisted on proceeding to trial despite any deficient advice of
counsel.

proceeding would have been different." (Id.)  Johnson fails to demonstrate any deficiency of counsel or resulting prejudice based on his vague and conclusory allegation that counsel should have filed an appeal of his sentence. Sanders, 373 U.S. at 19. For this reason alone, Claim Five will be dismissed.

Even if Johnson had stated more than conclusory allegations in support of his claim, Claim Five, nonetheless, lacks merit. "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000).  This determination must take into account "all the information counsel knew or should have known." Id. (citation omitted).

If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." Flores-Ortega, 528 U.S. at 478.  The prejudice prong requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he

would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." Id. at 484 (citations omitted).

Johnson never states that he told counsel or gave counsel any indication that he wanted to appeal. Thus, the inquiry turns to the duty to consult. Because the record is silent about whether counsel actually consulted with Johnson about an appeal, the Court presumes that Johnson intends to argue that counsel provided deficient representation in failing to consult with him about filing an appeal. In this situation, the relevant inquiry is, "whether the circumstances would reasonably have led counsel to conclude that 'a rational defendant would want to appeal,' thus prompting counsel's duty to consult." United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010) (citing Flores-Ortega, 528 U.S. at 480)).

> In determining whether a rational defendant would have wanted to appeal, [the Court] consider[s] important the facts concerning whether the defendant's conviction followed a trial or guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly waived or reserved some or all appeal rights.

United States v. Cooper, 617 F.3d 307, 313 (4th Cir. 2010) (citing Flores-Ortega, 528 U.S. at 480)). A defendant's expression of an interest in appealing, without more, does not establish that he would have appealed but for counsel's deficient performance. Flores-Ortega, 528 U.S. at 486. Johnson

16

Case 3:10-cr-00138-REP  Document 47  Filed 04/17/15  Page 17 of 22 PageID# 295

fails to demonstrate that the circumstances would have reasonably led counsel to conclude that a rational defendant would want to appeal. Johnson also fails to demonstrate any resulting prejudice.

At the time Johnson entered a guilty plea he faced a statutory mandatory minimum of ten years for Count One and could have received up to life in prison. (See PSR ¶ 76.) Johnson also had previously been convicted of a felony drug offense in 2007. Based on this prior conviction, the Government could have filed a notice pursuant to 21 U.S.C. § 851 of its intent to seek an enhanced sentence based on Johnson's prior conviction. Prior to August 3, 2010, Johnson's mandatory minimum sentence would have increased to twenty years in prison. See 21 U.S.C. § 841(b)(1)(A). Thus, when he entered his guilty plea, Johnson would have expected to receive a sentence of at least ten years for Count One—a sentence that was less than half of what he could have received had he elected to continue to trial. See Flores-Ortega, 528 U.S. at 480 (explaining that the Court must consider the sentence bargained for as part of the plea).

At the time of Johnson's sentencing in December 2010, despite the enactment of the FSA in August, no binding legal authority existed that would have required the Court to apply the FSA's new mandatory minimum sentence to defendants such as Johnson. Instead, as the Government argued, the General Savings

17

Statute, 1 U.S.C. § 109, precluded the Court from retroactively applying the FSA to Johnson.  See Warden, Lewis Penitentiary v. Marrero, 417 U.S. 653, 660 (1974) (citations omitted) (explaining that the Supreme Court broadly read § 109 "to bar application of ameliorative criminal sentencing law repealing harsher ones in force at the time of the commission of an offense").[6]  Thus, Johnson could not have reasonably expected to receive the new mandatory minimum sentence of five years for his conviction of Count One.[7]

Despite the prevailing law, counsel perceptively surveyed the legal landscape and advanced the novel argument at

---

[6] At the time of Johnson's sentencing, many district courts had decided that the FSA failed to apply to defendants such as Johnson, and two district courts had decided to the contrary. (See Dec. 3, 2010 Tr. 6-7.)  The Court noted that the Government had appealed one of the decisions holding that the FSA applied to those persons sentenced after the FSA. (See Dec. 3, 2010 Tr. 7.)

Even in May 2011, the United States Court of Appeals for the Fourth Circuit explained that General Savings Statute barred the FSA's application to a case pending on direct appeal at the time of its enactment.  United States v. Bullard, 645 F.3d 237, 248 (4th Cir. 2011).  The Fourth Circuit explained that "[w]e agree with all eight circuits that have ruled on the issue that the FSA contains no express statement of retroactivity, nor can any such intent be inferred from its language."  Id. (citations omitted).  Notably, Bullard did "not address the issue of whether the FSA could be found to apply to defendants whose offenses were committed before August 3, 2010, but who have not yet been sentenced."  Id. n.5.  Nevertheless, the Government's position at Johnson's sentencing had ample legal support.

[7] Indeed, the Court emphasized to Johnson:  "When you walked in this courtroom, you were facing a ten year sentence . . . . and by rights, a 120-month sentence would be appropriate in this case."  (Dec. 3, 2010 Tr. 40-41.)

sentencing that Johnson should receive the benefit of the FSA and therefore the mandatory minimum would decrease from ten years to five years. Due to counsel's forethought and persuasive argument, the Court sentenced Johnson to eighty-seven months, within the new advisory guidelines range, and below the ten-year mandatory minimum to a sentence. Thus, Johnson received a sentence that was significantly lower than what he bargained for when he entered a guilty plea.

Having just received the benefit of his counsel's forward-thinking legal argument, counsel would be justified in believing that no reasonable defendant in Johnson's position would want to appeal his sentence. This determination is bolstered by that fact, that the Government, believing this sentence to be in error, and armed with ample supporting law, appealed Johnson's sentence, arguing that the Court erred in sentencing Johnson with the benefit of the FSA and that Johnson should not have received a sentence below the ten-year mandatory minimum. In contrast, Johnson fails to identify, and the Court fails to discern, any nonfrivolous grounds upon which he could have appealed this sentence—a sentence that was lower than what he bargained for and within the advisory guidelines range. Thus, having entered into a knowing and voluntary plea agreement, having received a sentence lower than bargained for and the benefit of his counsel's forward-thinking legal argument, and

because no nonfrivolous grounds for appeal remained, counsel would be justified in believing that no reasonable defendant in Johnson's position would want to appeal his sentence. See Flores-Ortega, 528 U.S. at 479-80.

Moreover, Johnson fails to provide any argument demonstrating that after his sentencing, he "reasonably demonstrated to counsel that he was interested in appealing." See id. at 480. In support of his claim, Johnson merely suggests that he was unhappy with the eighty-seven-month sentence he received on Count One. Johnson provides no indication that he expressed this purported dissatisfaction with his sentence to counsel or otherwise expressed a desire to appeal. Under these circumstances, Johnson fails to demonstrate that counsel had a duty to consult with him about an appeal. Thus, counsel was not deficient.

Even if the Court found that counsel acted deficiently because she failed to consult with Johnson about an appeal, Johnson fails to demonstrate any resulting prejudice. Johnson has not demonstrated that "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 480. Johnson wholly fails to advance any argument suggesting that he was prejudiced by counsel's actions. Instead, he faults the Government for arguing that the FSA did not apply, and claims that "if the U.S.

Attorney would not have argued against the Fair Sentencing Act of 2010 . . . there is a reasonable probability that the result of the proceeding would have been different." (Mem. Supp. § 2255 Mot. 12.) As discussed above, Johnson has not identified, and the Court fails to discern, any non-frivolous grounds for appeal. Nor does Johnson provide any argument that he would have appealed.

In sum, Johnson demonstrates no deficiency of counsel for failing to consult with him about an appeal, and no prejudice from counsel's actions. Accordingly, Johnson's claim that counsel rendered ineffective assistance for failing to file an appeal lacks merit. Claim Five will be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, Johnson's claims will be dismissed. Johnson's § 2255 Motion (ECF No. 38) will be denied and the action will be dismissed. A certificate of appealability ("COA") will be denied.[8]

---

[8] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a COA. 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Johnson fails to satisfy this requirement.

The Clerk is directed to send a copy of this Memorandum Opinion to Johnson and counsel of record.

/s/  *REP*

Robert E. Payne
Senior United States District Judge

Date: *April 16, 2015*
Richmond, Virginia